This whole case on our call this afternoon is Agenda No. 17, Case No. 105-459, Maria Wackrow v. Frederick C. Niemi. Counsel, you may proceed. Good afternoon, and may it please the Court. I'm George Verdelia. I represent Marie Wackrow. We are here today asking this Court to overturn the decisions of the lower courts, which misconstrued and misapplied the exception to the statute of repose with respect to actions against attorneys for malpractice. In so doing, the lower courts ruled contrary to the interpretation this Court has placed on that exception in the case of Peterson v. Wallach, Justice Kilbride's opinion, which stated that that exception, that section, Section 214.3, paren D, is an exception to the statute of repose, allowing an estate or representative of the estate extra time to pursue a claim for malpractice if the statute of repose has already lapsed. Does Peterson control this case, Counsel? I think it is persuasive. I don't think that it controls, but I think it is very persuasive, Judge, in the interpretation of that section. I deliberately said that that was the Court's interpretation of the statute, but I did not say that it was the holding, because it wasn't necessary to deal with this issue that we're dealing with today, because in Peterson, the statute of repose had indeed lapsed, so they had to determine that the exception applied. Here, the statute of repose has not lapsed, because the services Mr. Nemi performed for Mr. Woods, my client's brother, were performed four months before he died, in April of 2002. So the first order of business, it seems to me, is to say, does the statute of repose apply? Clearly, it does not. The statute of repose had not lapsed. If the statute of repose does not apply, there is no need to look at the exception to the statute of repose. You only look at Section D if Section C applies by its terms. Before we get into that legal argument, can you clarify this point? Subsection D provides that when the injury caused by the act or omission does not occur until the death of the person for whom professional services were rendered, the action may be commenced within two years after the date of the person's death, right? No dispute so far, right? That's correct. Woods died in August 2002. Right. So under that provision, wouldn't Plain have been required to commence her action in August 2004? No, because it's an exception to the statute of repose. The statute of repose did not occur, was not invoked. But it is undisputed, she didn't file her malpractice claim until December of 2004, right? That's correct. So her claim would not have been untimely even if the shorter six-month period did not apply? Correct. It would not have been untimely because she did not have a claim against the lawyer until her claim in the estate was denied. She timely filed a claim in the estate for either the house or the $300,000. The executor denied her claim. It was at that point and only at that point that she had a claim against the lawyer. Had the executor accepted her claim, which the executor was perfectly able to do, entitled to do, but did not, had the executor accepted her claim, she would have had no cause of action against Mr. Namik. The cause of action did not arise upon the death of Mr. Woods. It arose upon the denial of the claim in the estate. Now the, I'm sorry, I just got off track for a moment. The reason for the existence of subsection D is only for the statute of repose. The court will note that subsection C, which is the statute of repose, specifically references D as an exception. D does not exist as a statute of limitations or any other limitations on claims. It exists as an extension of time, an exception to the statute of repose. You don't need section D unless you have section C, unless you have a statute of repose. There is no other purpose for that subsection to exist because you already have a statute of limitations for filing a claim. You already have a limitations period in the Probate Act for the estate to file claims or to accept claims. That's a six-month period. Is it your position that she had six years from the date of service to file her claim before subsection D would apply here? Well, the statute of repose would not have lapsed until 2008, but her statute of limitations began to run when the claim was denied. So she wouldn't have had six years under the statute. I guess my point is she couldn't have taken six years because the statute of limitations would have run. The statute of limitations began running when her claim was denied in the fall of 2003. The statute of repose had already started running but had not lapsed. Her claim would have been barred by the statute of limitations two years after her claim against Mr. Niemey would have been barred by the statute of limitations two years after her claim was denied in the estate. So the statute of repose really wouldn't have had any effect whatsoever. What about the Probate Act and how does that fit into your scenario? The Probate Act, this is not a claim by or against an estate. My claim against Mr. Niemey only is affected by the Probate Act to the extent that I had to file a claim. Within the six months. I had to file a claim against the estate to ask them to act in accordance with Mr. Wood's wishes to either give my client the house or the money. But that has nothing to do with the claim. The six-month period in the estate has nothing to do with the claim against Mr. Niemey. The estate acted on the claim. That act created my client's cause of action against Mr. Niemey. Until that point, she had no claim against Mr. Niemey. Once that act occurred, then the Probate Act really has no significance from then on because it's a claim that has been accrued to my client in the fall of 2003. And she has whatever time limits are set forth in the act for pursuing her claim for malpractice against Mr. Niemey. What exactly is the claim? Where did Mr. Niemey commit malpractice? Sure. Here's what happened. He created a trust and had Mr. Wood's property interest in the real estate to that trust. Mr. Wood's did not own that property individually in his own name at the time. Mr. Wood's had already placed that property in another trust, so all Mr. Wood's had to put in the living trust that Mr. Niemey created in April of 2002 was an assignment of his beneficial interest. Or they could have restructured the trust. But Mr. Niemey's conduct failed to determine that the title holder of the property, failed to determine that Mr. Wood's was, in fact, the title holder, or alternatively, failed to accomplish Mr. Wood's purpose of getting the property into that trust by whatever means was necessary based on the title documents that already existed. So then your problem is whether or not in this legal malpractice action you can establish that the sister was, in fact, the client of the attorney that she's- She's a third-party beneficiary of the arrangement, of the relationship, yes. She is a third-party beneficiary of that trust, of the agreement between Mr. Niemey and Mr. Wood's to put that property in trust for her benefit. So you concede that she was not a client? She was not the client. That's correct. She was one of the people for whom services were rendered because she was an intended third-party beneficiary. What does the holding of Peterson- Is there any significance to the portion that says that 13-214.3 subparagraph D is not limited to assets distributed through estate proceedings, nor does it contest the validity of the will? Any significance to that? I think it supports our point that it has to do with whatever- whenever the death of a person creates the claim or right that if the claim has already been- protected by the statute of oppose, if it happened more than six years before the death of that person, you get an additional six months to pursue it, whether or not it's a will or a trust or any other instrument. The operative fact is not whether it's a will in probate, but whether or not- but whether it is created by the death of the person. I think that's what Peterson stands for in finding that, in that case, the statute of oppose had lapsed. So it was enhancing the plaintiff's rights there in finding that the exception to the statute of oppose applied not only to matters in probate involving wills that were admitted to probate, but also trusts. And the crucial fact was whether or not the claim first arose as a result of the death of the person. Typically, it happens when somebody has designed an estate plan in an effort to avoid certain taxes or minimize taxes. And, in fact, it doesn't do that. So the estate itself is damaged because it had to pay more taxes than it should have if the lawyer had done her job properly. And that is an action that the estate can bring in its own name. The estate was damaged as a representative of the client. And it has an additional six months, even if the statute of oppose, even if the work was done 50 years ago. Is that because the injury doesn't occur until the death because the decedent could always change whatever trust or- In that particular instance, that's correct, yes. And that is one of the factors that the courts have looked at is that if that's the- that truly is caused by the death of the client because up until that point, the trust could always be changed. Two other points I'd like to make. One is that in the appellate court opinion, one of the things it says at one point is that it references discovery language, that my client discovered her claim only later. I want to make very clear we're not making any argument on the discovery aspect of things. It is not a question of whether the claim was discovered or not. Discovery relates to statute of limitation. Statute of oppose doesn't care whether you've discovered the claim or not. It is a final bar except for this exception set forth in Section D. It was not that my client had not discovered her claim until it was rejected- until the administrator in the estate rejected her claim. She did not have a claim against Mr. Nieme until the estate rejected her claim. So the discovery rule, to the extent that there's any implication or inference that that applies, that's absolutely not the case. One final point. Counsel for Mr. Nieme argues that our theory, our interpretation, would toll all claims until the deaths of the beneficiaries. That's simply not so, as Justices Thomas' questions and my answers just pointed out. She doesn't get to go on forever with a claim against Mr. Nieme. She did exactly what she should have done. She filed the claim in the estate. The estate could have granted her claim and paid her the money, in which case she would have had no claim against Mr. Nieme. It did not grant her claim. Therefore, starting at that point, that was when her claim accrued against Mr. Nieme. She had normal statutes of limitations periods to pursue that claim. Had she not done so, they would have been barred. They would have been barred two years after her claim against her claim in the estate was denied, because that would have been the expiration of the statute of limitations period. So it's a bit of a straw person argument to say that it would toll them until her death. It would not. Tell me again how the estate could have paid this. Well, the estate is entitled to pay any claims that it believes were the valid intent of the decedent. Clearly here, the decedent intended to give Marie Wackrow either the house or, if the house had been sold, $300,000. The administrator could have given her the house was sold, in fact. So the administrator certainly could have given her $300,000. There was a written instrument clearly manifesting Mr. Woods' intent to give his sister $300,000. The administrator was, and I've cited this section, the administrator can grant claims to the extent that it believes they're valid claims. So the administrator could have granted that claim. But at the time of the decedent's death, he didn't own the property. It was in the land trust. Isn't that right? That's correct, but the point is the trust doesn't only give her the house. It gives her the house or, if the house was sold, the money. So the administrator was entitled to give her the $300,000 based on the fact that that's the written manifestation of the decedent's intent. Are we deciding both what the statute of limitations is and what that time frame is and also when the act was committed to trigger that applicable statute of limitations, or are we just deciding the term of the statute of limitations? Well, if I can just rephrase a little bit, I'm not asking for a determination of statute of limitations. The first and primary point is I'm saying that this is an exception to the statute of repose, which does not apply in the first instance because the statute of repose doesn't apply. Unless you can show first that the statute of repose applies, Section D is a non-event. It's a non-entity. It doesn't mean anything in our claims. Now, there is a second prong to the appeal, which is even if one were to assume for the moment that that exception is, in fact, a limitations period, it doesn't apply to this case because my client's claim did not accrue upon the death of the deceased. My client's claim only accrued, my client's claim against Mr. Nieme only accrued after the estate rejected her claim in the estate because she was not damaged by Mr. Nieme until that happened. But whether you call it a statute of limitations, they're arguing that it is barred by that subsection D. Correct. No, I said that's what their argument is, and perhaps I have not answered your question. No, you have. Okay. Sir, I'd just like to have you explain again to me, if property doesn't exist at the time of the decedent's death and the decedent had gifted over to someone and it doesn't exist, they wouldn't have a claim. Isn't that what the claim, why the claim was denied? Because it wasn't there. The property wasn't there. No, it was denied. There was not a reason given for the denial. But the property. You're saying that the trust agreement didn't have the property. It didn't have the property, but the property had been sold before the claim was made. Right, and what if the decedent had spent it before he died, and even though he didn't change anything in his will, it wouldn't have existed. But the proceeds from the sale would have been in the trust, and that's what he intended to have happen. He intended that if she didn't get the house, if the house was sold, he intended her to have $300,000, which he anticipated was the proceeds of the house. In fact, it was more than that. He made a specific gift to her of the cash in the event that the property had been sold. The estate had enough money in its accounts to pay this gift? Yeah, there was no claim that they didn't have enough money to pay the gift. That concludes my prepared remarks. Oh, sure. I just have to go into this language of Peterson one more time. I started by asking you why it isn't dispositive. I think you said because in this particular case, well, let me just give you the language again. Section 13-214.3D unambiguously applies in all cases when the alleged injury caused by the malpractice does not occur until the death of the client, and that's certainly the case with the trust like we have here. Regardless of whether the deceased client's assets are distributed by probate, intervivus, trust, or some other mechanism. So let me put it this way. If we disagree with your argument that the injury did not occur until a plaintiff's claim against the estate was denied, which is your argument, and you brought that up last time I raised Peterson, if we disagree with that portion of your argument, does Peterson prevail and is it dispositive at that point? Specifically the language I just cited. I don't think that that's a complete reading of Peterson because what Peterson says is, I mean, the words you read are there, but the point is Peterson later says that Section D was intended, created as an exception to the statute of repose. And you'll recall in Peterson the court was dealing with a set of facts that included the lapse of the statute of repose. That's what the defendant was arguing was that the statute of repose applied and that the exception did not apply to the trust situation. So I think it's taking that statement out of context to say that it would apply even in cases where the statute of repose has not lapsed because that would contradict the later passage in Peterson in which it says it was simply intended to create an exception to the six-year repose period for attorney malpractice actions. That concludes my prepared remarks. Thank you, counsel. Mr. Dillon, you may proceed. Thank you, Your Honor. May it please the court. My name is Thomas Dillon and I represent the defendant, Frederick Nemi. I believe Justice Thomas' question is directly to the heart of this matter because the Peterson case answers the questions in this case. This Court's decision in Peterson talked about the lone inquiry, the lone inquiry that has to be asked in a context like this. And I'll get to that lone inquiry and the answer to that lone inquiry. But it's extremely important to understand that although the Peterson case did involve facts where the six-year statute of repose had passed, it is the only case interpreting this statute where the six-year period of repose had passed. Every other case that is published that involves this Subsection D involve facts where the six-year period of repose had not yet lapsed. And as the Poulet Court noted in the First District, this statute, Subsection D, is used both to expand and to shorten the limitations period. Now, I want to talk a little bit about the actual breakdown of our Limitations Act for attorneys. It is my privilege to argue before you for the first time myself. Last time I was here, I was co-counsel on the DeLuna case. And in that opinion, there's a terrific phrase used, literal laxity. And that was a reference to how we describe limitations periods, whether they are statutes of limitation or statutes of repose. This statute has a combination of statutes of limitation or limitation periods and statutes of repose. Subsection B very clearly is a discovery-based statute of limitation, two years from the date that the plaintiff knows or reasonably should know of an injury and knows that that injury was wrongfully caused by an act or omission of an attorney. Very clear. Subsection C is a period of repose. It starts at a finite time and ends at a finite time. Whereas the time frame under Subsection B, the statute of limitations, is a sliding scale. Those two years can be different for every single case. Under Subsection C, the six-year period is always the same, starting on the first day after the lawyer last does work on the matter. Start the clock, six years later, clock expires, all claims are barred. That Subsection C, statute of repose, can consume a cause of action before it even accrues, before it even exists, before the plaintiff knows that the plaintiff has a claim under Subsection B. It can also shorten the time frame of the Subsection B claim. Now, both Subsection B and Subsection C start the exact same way. They start off with two words, an action, both of them. Subsection D is different. Subsection D doesn't start off with an action. Subsection D is a separate animal that applies to a certain type of claims. It's a certain type of injury, and that is an injury that occurs only after the death of the person for whom professional services were rendered. I've argued this issue before, and I usually modify some of the language a little bit for purposes of an argument. I want to stay as strictly as possible with the statute, but I changed that wording to say it's after the person for whom legal services were rendered, instead of professional services, since we're always talking about lawyers here. In this case, the first work that my client did was in 1993. That was writing the trust. Had the amendment to this trust not been done in 2002, the six-year statute of oppose would have been in effect. By rewriting the trust in April of 2002, this issue comes up, and that's why we're here. I'd like to backtrack for a moment and answer a question that you asked, Justice Thomas, about the two-year statute. I made a mistake in my brief that I need to correct, and that is I compared this case to Poulet, and I said that, like Poulet, this claim was brought within two years of the death of the client. That's true in Poulet. It's not true in this case. Mr. Woods died in August of 2002. The exact date is not in our record. This complaint was filed December 27, 2004. So it was filed more than two years late. That's important because if we look at subsection D, subsection D sets out two distinct frameworks of limitations periods for injuries that arise on the death of the person for whom legal services are rendered. Let me stop you there, Mr. Dillon, because I believe opposing counsel says the injury didn't occur until the claim of the estate was denied. How do you address that argument? I disagree with it for a very simple reason. The trust amendment that is attached to the complaint calls for a conveyance of real property from the trust to the plaintiff within two months of the death of Mr. Woods. Assuming for the sake of the argument that Mr. Woods died on the last day of August of 2002, on the 31st, then within two months, Ms. Wackrow was to receive a conveyance of that real property. So by October 31st of 2002. That didn't happen. She knew it didn't happen. She was injured at that time. She had suffered an injury for which she could seek damages. So, in fact, if her claim was subject to subsection B, it would be barred by the two-year statute of limitations because that two-year clock on her claim, if subsection B applied, started clicking at the very last day, October 31st of 2002. But, counsel, wouldn't that argument, or to make that view work, that that property would have to be within the confines of the property of that trust at the time this amendment number two was made on April 17th of 2002? I think that's true to the extent that if you want to take it out of subsection D and put it into subsection B, yes, you have to do that. Whether it's a B claim or a D claim, she still suffered her injury, and an injury is the same under B, C, and D. So if it's an accrual analysis, it accrued when she didn't receive the property that she was supposed to have received. Well, now, the trial court dismissed this on a timeliness, whether you call it statute of limitations or not. It was barred for time reasons, correct? Correct. So do we then take as true for purposes of this appellate review that there was malpractice and that what the malpractice was and when it was committed? Are those given facts or not? Given legal facts. Facts, yes. I dispute the conclusion of malpractice. When I give seminars, I like to say that legal malpractice is a bit like murder. It's a legal conclusion. Not all homicides are murders. Not all mistakes by lawyers are legal malpractice. I mean, to have the benefit of this time bar, you have to put it into the category of legal malpractice. We do, and that's why I assume these facts, including the amendment to the trust in those dates, is true for purposes of the analysis today. And you're right, Your Honor, the trial court dismissed this on a subsection D basis, and the appellate court affirmed it on a subsection D basis, and I believe that subsection D is what applies to this claim. Again, going to what Justice Thomas pointed out in the Peterson decision, the portion of the language that Justice Thomas read is critical to the analysis here, because what the court said is, I wrote in a bad pen color and I apologize, the language of section 13-214.3D unambiguously supports its application to all cases. When the alleged injury caused by the attorney's act or omission does not occur until the death of the person for whom the professional services were rendered. In plaintiff's amended complaint, she concedes that the injury occurred after the death of Mr. Woods. Therefore, subsection D applies. But continuing with that language from Peterson, this court said, there is no language limiting such actions to those that involve assets distributed through probate proceedings or excluding actions that involve non-probate distributions of assets. Therefore, under the statute, a plaintiff has two years to file a claim unless letters of office are issued or the will is admitted to probate. That's important because while the statute does not have any language expressly conditioning the application of the assets passed, it also has no language expressly or impliedly conditioning its application on the inapplicability of section B or section C or on the applicability of either of those two subsections. So it is not necessary by the terms of the statute itself that the proposed period of subsection C have expired in order for subsection D to apply. That's the implication or that's the portion of the statute that I think plaintiffs would have the court read in. It's just not there. And so that is why I believe that language that Your Honor cited is so critical to the analysis and the decision the court has to make here. The court was unwilling to read the exception in the Peterson case, and it should be equally unwilling to read an exception in here where that exception was not written by the General Assembly. Now the court said in Peterson that the lone inquiry made by a trial court when determining whether section 13-214.3 sub D is applicable is simply whether the injury caused by the malpractice occurred upon the death of the person for whom legal services were rendered. That's the lone inquiry. And that is something that is conceded by the plaintiff in her complaint. Now there have been several formulations of the timing of the death and the injury. Injury is equivalent to damages as used in the statute. So when the plaintiff has damages, there is injury. This plaintiff suffered damages when she didn't get what the trust amendment said she was supposed to get in October of 2002. Answering the threshold inquiry, though, of when this injury occurred takes us to when did Mr. Woods die? And did this injury occur before or after he died? Is there any difference between having subsection D come into effect after the death of the person for whom the legal services were rendered or as opposed to upon the death? Because those two words are being used interchangeably. They are. And the reason that they're used interchangeably is because the statute says until. The Palmeros case says until after. And this court said upon in the Peterson case. I think all of them mean the same thing, and what they mean is not before. If it doesn't happen before the death, subsection D applies. So we're sort of playing with prepositions because the context, my formulation of not before, doesn't fit linguistically into the cases, the analysis, or the statute itself. And until fits, but in context, upon is perfectly correct in the way this court wrote it in Peterson. So I think they're all equivalents, but what they really mean is if it didn't happen before the death of the client, it's a subsection D claim. And I think that's what we are faced with here. In the alternative, if it isn't a subsection D claim, I do believe that under subsection B the plaintiff's cause of action accrued. The plaintiff knew the cause of action. Her clock started ticking in October of 2002, and the December 27, 2004 filing was untimely. We urge you to affirm the lower court's dismissal of the plaintiff's complaint, and thank you for your attention. The significance of the language that Justice Thomas quoted from the Peterson opinion, in saying that, in its use of the word all cases upon the death of the client, in the context of the Peterson case, it was saying not only probate cases, but non-probate cases. The Peterson case was dealing with a situation in which the statute of repose had lapsed. And I think that that context, combined with Justice Kilbride's comments at the end of the opinion, in which it is stated that section D is simply intended as an exception to the statute of repose, is a clear statement that the statute of repose has to be invoked first before you look at subsection D. Subsection C, which is the statute of repose, is the only section in that group of sections that references subsection D. Subsection B doesn't reference it. The other subsections don't reference it either. The last point I want to make is counsel's comment about the trust being distributed within two months after his death. That was the reason that my client timely filed a claim in the estate. She filed the claim within six months, which is required by the Probate Act, and the claim was denied. Starting with the denial of the claim is when my client was injured by the conduct of Mr. Niemeyer. Thank you. Case 105-459 will be taken under advisement as agenda number 7.